

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO

DAVID R. RODGERS,                        )
                                         )
        Plaintiff,                       )
                                         )
                                         )
v.                                       )      **VIOLATION OF CIVIL RIGHTS,**
                                         )      **VIOLATION OF AMERICANS**
                                         )      **WITH DISABILITIES ACT,**
THE TOWN OF CHINA GROVE,                 )      **UNLAWFUL ENTRY**
Officer JEREMY VAIL, and Officer         )
JEFFREY WASHAM, sued in their            )
individual capacities, and Chief of      )      **No.** 1:22CV518
Police ANDREW DEAL, sued in his          )
Official and individual capacity.        )
                                         )
        Defendants.                      )
_____)

Plaintiff DAVID R. RODGERS, files this civil action against Defendants TOWN

OF CHINA GROVE, members of the China Grove Police Department ("CGPD"),

Defendant Officers JEREMY VAIL, JEFFREY WASHAM , and Defendant China

Grove Police Chief ANDREW DEAL, state:

# PRELIMINARY STATEMENT

1.      Plaintiff David R. Rodgers brings this civil rights action for damages and

other relief due to the actions by China Grove Police Officers resulting in injury and

unnecessary use of force. The Defendant China Grove Police Officers causing mental

1

anguish, pain, and duress by restraining Plaintiff prone on the floor, handcuffing Plaintiff behind his back and the use of unreasonable use of force and failure to promptly attend to Plaintiff's serious medical and mental health needs.

2.      The force was unnecessary, unreasonable and excessive because Plaintiff was not engaged in any criminal conduct, was unarmed, made no threats to police or others, presented no immediate danger to officers, himself or to others, was not actively under arrest, and was particularly vulnerable to the excessive force because of his agitated mental state which was caused by Defendant China Grove Police Officer Jeremy Vail's actions as explained herein.

3.      The written and *de facto* policies, practices and customs of Defendant Town of China Grove and its Police Department contributed to and were a moving force behind Plaintiff's injuries, as the Defendant officers were acting pursuant to these policies, practices and customs, which included the use of force to individuals who are in a prone position and handcuffed behind their back, and the treatment of people who experience a mental health crisis caused by the actions of the Defendant Officers.

4.      Defendant Officers entered Plaintiff's home by force without identifying themselves or stating their reason or reasons for being at Plaintiff's residence.

## PARTIES

5.      Plaintiff David R. Rodgers is a resident of China Grove, Rowan County, North Carolina.

2

6. Defendant Town of China Grove ("Town") is a municipal corporation organized under Chapter 160A of the North Carolina General Statues. It maintains and operates the China Grove Police Department ("CGPD"). Employees of CGPD are employees and agents of the Town, which bears legal responsibility under state law for negligent acts and omissions of CGPD in the course of their employment. The Town is responsible for the appointment, training, supervision, promotion and discipline of officers and supervisory police officers, including the individually named defendants herein.

7. Further, on information and belief, at the time of this action, through purchase of commercial insurance, the Town and its agents are insured against any judgement against it, or its agents named in this action.

8. All Individual Defendant CGPD Officers, listed below, are entitled to indemnification by the Town of China Grove under North Carolina law for any liability arising from conduct described herein.

Note: Each Defendant's information is attached on a separate page.

9. Officer Jeremy Vail is a police officer employed by the CGPD, being sued in his individual capacity.

10. Officer Jeffrey Washam is a police officer employed by the CGPD, being sued in his individual capacity.

11. Chief of Police Andrew Deal is a police officer who was employed by the CGPD at the time of this incident, being sued in his individual capacity and his official capacity.

3

## JURISDICTION

12.  Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, 1343(a)(b) invokes this and (a)(4) because Plaintiff's claims arise under law of the United States and seek redress of the color of state law of rights guaranteed by the United States Constitution.

13.  Plaintiff further Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any and all North Carolina state law claims and causes of action which derive from the same nucleus of operative facts and are a part of the same case or controversy that gives rise to the federally based claims and causes of action.

## VENUE

14.  Venue is proper for the United States District Court for the Middle District of North Carolina, pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), and 28 U.S.C. § 1402(b), where Defendants reside and maintain their relevant places of business, and where the action complained of herein occurred.

## JURY DEMAND

15.  Plaintiff respectfully demands a trial by jury of all issues in his matter pursuant to Fed. R. Civ. P. 38(b).

## FACTS

16.  David R. Rodgers, Plaintiff ("Plaintiff") is a resident of China Grove, North Carolina.

4

17. Plaintiff is a 62-year-old disabled male that has been diagnosed with Bipolar I Disorder, heart failure, kidney disease, and diabetes.

18. Plaintiff also has severe osteoarthritis in both knees and uses a wheelchair for mobility.

19. As a result of Plaintiff's medical issues as stated in #17and #18, above, these issues have caused manifested episodes of paranoia, with symptoms of, but not limited to, altered mental status, physical pain and suffering, inability to walk, is required to use a wheelchair which limited Plaintiff's independence regarding his mobility, on a daily basis.

20. On the evening of October 23, 2019, Plaintiff had called Aetna Insurance Company ("Aetna") to inquire about a wheelchair he was trying to obtain through Medicare. Plaintiff has a Medicare Advantage Plan (Medical Insurance) with Aetna.

21. During the conversation Plaintiff was telling the Aetna customer service representative about an episode of the television program "Criminal Minds" where an actor was portrayed to have ALS and had stated before the disease crippled her and she was not long able to live normally, she wanted to leave on her own terms.

22. Plaintiff told the representative that he agreed with the actor and that if someone got to the place there was no medical treatment for the patient should he/she be in pain, etc. with no probability of reversal, he or she should be able to leave here on their own terms.

5

23.     At no time did Plaintiff state that he was actively going to harm himself or others. Plaintiff actually stated to the representative that he was not going to harm himself.

24.     The Aetna representative then put Plaintiff on hold.

25.     Within minutes, someone began knocking very loudly on Plaintiff's door in the manner someone would knock trying to alert the occupants that the house was on fire.

26.     Plaintiff was sitting on the couch and transferred to his wheelchair to answer the door. When Plaintiff opened the inside door, someone was shinning a very bright flashlight in Plaintiff's face and eyes causing him to be unable to see who was on the deck.

27.     Before Plaintiff could reach to unlock the storm door, someone, later identified as Defendant CGPD Officer Jeremy Vail, jerked open the locked storm door as he and Defendant CGPD Officer Jeffrey Washam forced their way into Plaintiff's home requiring Plaintiff to move as the Defendants CGPD Officers left Plaintiff no option.. At no time prior to entering Plaintiff's home did Defendant CGPD Officers Jeremy Vail or Jeffrey Washam give notice to Plaintiff of their authority and purpose to Plaintiff for forcibly entering Plaintiff's home. Defendant Officers could clearly see that no exigent circumstances existed.

28.     At no time prior to Defendant CGPD Officers Jeremy Vail's or Jeffrey Washam's forced entry into Plaintiff's home would there have been any reasonable

6

belief that Defendant CGPD Officers Jeremy Vail or Jeffrey Washam was being denied or delayed in Plaintiff answering the door.

29.     Defendant CGPD Officers Jeremy Vail and Jeffrey Washam forced their way into Plaintiff home therefore causing Plaintiff to move backwards in the wheelchair. Once inside, Defendant CGPD Officer Jeremy Vail started asking Plaintiff why he was wanting to harm himself.

30.     At the time Defendant CGPD Office Jeremy Vail was asking Plaintiff why he was wanting to harm himself, Plaintiff had no idea what Defendant CGPD Officer Jeremy Vail was referring to.

31.     Plaintiff stated to Defendant CGPD Officer Jeremy Vail that he was not wanting to harm himself, that he was fine, and asked him to leave. Plaintiff was, however, upset with the Defendant Officer's Jeremy Vail and Jeffrey Washam forcing their way into Plaintiff's home without identifying themselves or stating the reason for being at Plaintiff's home.

32.     Plaintiff then moved away from Defendant CGPD Officer Jeremy Vail to keep him from being in Plaintiff's face as Defendant CGPD Office Jeremy Vail began badgering, harassing, and trying to provoke Plaintiff. Plaintiff raised his arms in a normal defense move to keep Defendant CGPD Officer Jeremy Vail from putting his hands on Defendant. By Defendant CGPD Officer Jeremy Vail's grabbing Plaintiff's arms, he caused numerous skin tears on Plaintiff's arms.

33.     Plaintiff then moved to the living room and transferred from the wheelchair to the couch. Defendant CGPD Officer Jeremy Vail came into the living

7

room, put his foot on the arm of Plaintiff's couch and continued to badger, harass, and trying to provoke Plaintiff.

32.    After Plaintiff had enough, he pretended to take some medication that was on the coffee table, however he did no ingest any of the medication. Plaintiff actually blew the medication onto the floor and stated to Defendant CGPD Officer "is that what you want?" At that time, Defendant CGPD Officer Jeremy Vail stated "that's it" and without obvious indifference to Plaintiff's mental health or physical impairments, grabbed Plaintiff, threw Plaintiff on the floor, face-down, in a prone position, and handcuffed Plaintiff behind his back.

33.    While Plaintiff was on the floor as described in #32, above, Plaintiff was experiencing excruciating pain in his neck and tried to move his head to relieve the pain. Defendant CGPD Officer Jeremy Vail then put pressure on Plaintiff's neck and stated that "if you continue to move it's going to hurt more." Plaintiff laid on the floor for twenty (20) or more minutes unable to move.

34.    During this entire time, Defendant CGPD Officer Jeff Washam stood in Plaintiff's kitchen and never spoke or moved or made any attempt to intervene in stopping Defendant CGPD Officer Jeremy Vail from badgering, bullying, or attempting to provoke Plaintiff or using unnecessary or excessive force on Plaintiff.

35.    Defendant CGPD Officer Jeremy Vail, after Plaintiff lay on the floor, stated to Plaintiff that he (Plaintiff) was going to the hospital, and he (Plaintiff) could either go in the police car or by ambulance. Plaintiff was afraid of what other

8

unnecessary force Defendant CGPD Officer Jeremy Vail might use on him (Plaintiff) if he went in the police car and stated he (Plaintiff) would go by ambulance.

36. Defendant CGPD Officer Jeremy Vail then went outside and when he returned, had Plaintiff to sit up in the floor still handcuffed behind his back.

37. Shortly members of the China Grove Fire Department's EMT's arrived at Plaintiff's home. Plaintiff informed them to leave his home that he did not want them there and he would get any needed treatment when the ambulance arrived.

38. During the incident, and because Plaintiff is bipolar and suffers pain due to the osteoarthritis in the knees, Plaintiff had become terribly upset with the actions of Defendant CGPD Officer Jeremy Vail.

39. When the ambulance arrived, Defendant CGPD Officer Jeremy Vail removed the handcuffs from Plaintiff's wrist.

40. Plaintiff was then placed on the stretcher and placed in ambulance.

41. Plaintiff was transported to Novant Rowan Medical Center ("NRMC") in Salisbury, NC by ambulance.

42. Once Plaintiff arrived at NRMC, he was placed in a room in the emergency department ("ER") and was required to remove his street clothes and was required to put on "paper" clothes provided by the NRMC.

43. After NRMC nursing staff took Plaintiff's vital signs, the ER doctor came in and ordered an x-ray and blood tests. An EKG was also taken.

44. Plaintiff then asked a nurse to take pictures of Plaintiff's injuries to his arms and the nurse obliged.

9

45. After the results of the blood test were received, the ER doctor told Plaintiff that his potassium and magnesium were low and that she was going to order IVs to bring them up to normal levels.

46. Another NRMC nursing staff bandaged Plaintiff's arms and the ER doctor ordered a tetanus shot due to the injuries on Plaintiff's arms.

47. After the tests and IVs were started, a sitter from the hospital was stationed in the room with the Plaintiff. The Plaintiff and sitter communicated with each other about why Plaintiff was at NRMC. Plaintiff learned that Defendant Officer CGPD Officer Jeremy Vail had told NRMC staff that 1) Plaintiff had turned over an end table: 2) Plaintiff had called the insurance company asking what would happen to his insurance if (he) Plaintiff died; and Plaintiff informed NRMC staff that neither of the statements made by Defendant CGPD Officer Jeremy Vail were true.

48. After several hours, NRMC staff brought a computer into the room with Plaintiff. Plaintiff was told by NRMC staff that a psychologist would be interviewing Plaintiff via tele-conferencing shortly. Plaintiff also learned from NRMC staff that Defendant CGPD Officer Jeremy Vail had secured an Involuntary Commitment order from a North Carolina Magistrate. Based on information and belief, based on the Involuntary Commitment Order, and NRMC records, Defendant CGPD Officer Jeremy Vail knowingly and willfully made numerous false and inaccurate statements to the North Carolina Magistrate in order secure the order against Plaintiff.

49. Once the psychologist was on-line, psychologist and Plaintiff talked for approximately thirty (30) minutes or longer.

10

50.     After several more hours, Plaintiff was move to another room in the ER department. Once there, a NRMC staff member asked Plaintiff why he was there. After Plaintiff explained to the NRMC staff member what had transpired, she stated that I should not have been there in the first place, and she was going to contact someone in the Behavioral Health Unit about getting me home.

51.     About thirty (30) minutes later, a representative from the Behavioral Health Unit. NP Ridenhour stated patient can be safely discharged home and stated to the Plaintiff that it was "a lot of misunderstandings" and Plaintiff could get dressed and get ready to go home. The ER doctor also came in and asked Plaintiff if he was ready to go home. The ER doctor also told Plaintiff to get dressed and ready to go home.

52.     Plaintiff informed NRMC staff that he did not have a way home and was informed by NRMC staff that Plaintiff would be provided transportation to his residence.

53.     Plaintiff was transported from NRMC to is residence.

54.     Throughout this incident, Plaintiff presented a purely medical and mental health problem, not a law enforcement problem. Plaintiff had not committed a crime, was not engaged in any criminal conduct, was unarmed, made no threats to the Defendants or others, presented no immediate danger to the Defendants or others, and was not actively resisting arrest.

55.     Plaintiff was particularly vulnerable to the physical consequences of being placed in a prone position, handcuffed behind the back, not being allowed to move his head or neck and was in an agitated state due to the actions by Defendant CGPD

11

Officer Jeremy Vail. Defendants were aware of Plaintiff's mental and physical state and vulnerability from the moment they forced their way into Plaintiff's residence. Plaintiff also believes that Defendant CGPD Officer Jeremy Vail had already decided at the time he forced his way into Plaintiff's residence that he would take whatever action was necessary to have Plaintiff sent to the hospital.

56.     As a direct and proximate cause of the actions and inactions of Defendants as detailed above and below, Plaintiff suffered, among other things, bodily injury, pain, suffering and severe emotional distress and anxiety.

57.     Defendant's conduct, as alleged, was unreasonable, and was a reckless disregard for Plaintiff's physical and mental health.

## POLICY AND PRACTICE ALLEGATIONS

58.     The Defendant CGPD was notified by Plaintiff of the incident and asked CGPD Chief Andrew Deal to conduct a full investigation regarding the incident. CGPD Chief Andrew Deal responded that I was to be interviewed, with a recording device, regarding the incident. CGPD Chief Andrew Deal informed Plaintiff the interview was to be conducted within ten (10) days and that I could have an attorney present at the interview. Since I (Plaintiff) had not secured an attorney at that time, I felt paranoid and reluctant to consent to the interview and no interview was held; formally or informally.

59.     Plaintiff is aware that the CGPD has a policy regarding the use of force for individual(s) that have been arrested for a criminal offense, however Plaintiff is

12

unaware if the CGPD has a policy regarding the use of force individual(s) being taken into custody in a medical or mental health situation.

60.     Plaintiff is unaware if any Defendant CGPD officer received any discipline for their actions and inactions in relation to the actions against Plaintiff, as alleged herein.

61.     Defendant Town of China Grove and its Police Department, and other decision makers, including China Grove Police Chief Andrew Deal, without deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of the Plaintiff, and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied written and *de facto* policies, practices, or customs and usages of, among other things.

62.     a. failing to train and supervise officers as to whether, under what circumstances, and/or how to use restraints to bind a person's arms behind his back while in a prone position;

        b.   training, encouraging and or authorizing officers to use restraint devices to bind a person's arms behind his back in a prone position without regard to whether a person was a criminal suspect, or was particularly vulnerable to the physical and mental consequences of being restrained in such a manner;

        c.  subjecting people to unreasonable uses of force when they are experiencing symptoms of mental illness rather than a law enforcement problem;

13

d. failing to train officers not to treat people who present mental health issues as criminal suspects in whether, what and how they should be restrained or taken into custody;

e. failing to train, supervise, and control employees of the dangers of use of restraints, especially people like Plaintiff, whose physical and mental state make them particularly to the effects of restraints and render such tactics dangerous;

f. failing to implement protocols and train officers in the proper way to contain, treat and secure people like Plaintiff who are not criminal suspects but who may be in an irrational and/or delusional and/or agitated state because of mental health crisis or physical disabilities;

g. selecting, retaining, and assigning officers with demonstratable propensities for excessive force, violence, and other misconduct;

h. failing to monitor, discipline and control officers involved in misconduct.

i.. condoning and encouraging officers, in the belief that they can violate the rights of people like the Plaintiff with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

63. Defendant Town of China Grove, its Police Department, and their decision makers, including China Grove Police Chief Andrew Deal, authorized, acquiesced in, tolerated, permitted and/or maintained customs and usages permitting the other defendants herein to engage in the unlawful and unconstitutional actions, *de facto* and written policies, practices, and customs or usages set forth herein.

14

## DAMAGES ALLEGATIONS

64.     Plaintiff has suffered and sustained severe emotional distress, loss of life's enjoyments, post-traumatic stress, paranoia along with physical and mental pain and suffering;

65.     The conduct of the individual defendants was willful, malicious, oppressive, and reckless disregard for constitutional rights, of Plaintiff, thus justifying punitive damages against the individual defendants.

## FIRST CAUSE OF ACTION
## (42 U.S.C. § 1983 – Use of Force)

66.     Each paragraph of this Complaint is incorporated as if restated fully herein.

67.     Defendants, acting jointly and in conspiracy and under color of law, deprived Plaintiff of rights, privileges, and immunities secured under the Constitution of the United States, including those secured by the Fourth and Fourteenth Amendments to the Constitution. In addition, Defendant CGPD Officer Jeff Washam, failed to intervene on Plaintiff's behalf to stop the use of unreasonable and excessive force having the duty and opportunity to do so.

68.     The foregoing wrongful acts of defendants has caused Plaintiff pain and suffering, mental anguish, undue stress, and anxiety.

69.     As a proximate result, Plaintiff is entitled to damages for the pain and suffering, mental anguish, undue stress, and anxiety

15

## SECOND CAUSE OF ACTION
## (42 U.S.C. § 1983 – *Monell Liability*)

70.     Each paragraph of this Complaint is incorporated as if restated fully herein.

71      At all times relevant to this Complaint, Defendant Town of China Grove, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff, including the right to be free from unreasonable and excessive force under the Fourth Amendment and Fourteenth Amendment, maintained, tolerated, ratified, permitted, acquiesced in, and/or applied among others, one or more of the *de facto* and written policies, practices and customs, individually or together, as alleged above.

72.     As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as further stated forth above.

## THIRD CAUSE OF ACTION
## (42 U.S.C. §§ 12131 – 12134 Americans with Disabilities Act)

73.     Each paragraph in this Complaint is incorporated as if restated fully herein.

74.     Title II of the Americans with Disabilities Act ("ADA") (42 U.S.C. 12131 – 12134) applies to the Town of China Grove and the China Grove Police Department.

16

75.     The China Grove Police Department and its operations comprise program and service for Title II purposes.

76.     Plaintiff had mental health and physical disabilities throughout the time he was in contact with police Defendants, in violation of Title II of the ADA.

77.     Defendant Town of China Grove failed and refused to accommodate Plaintiff's mental health and physical disabilities and to modify their operations, services, accommodations, and programs to reasonably accommodate Plaintiff's disabilities, in violation of Title II of the ADA.

78.     Defendant Town of China Grove's failures cost Plaintiff to experience pain and suffering, mental anguish, stress, and anxiety.

79.     Plaintiff is entitled to recover for those damages as described in this Complaint as a result of Defendant Town of China Grove's violations of the ADA.

# FOURTH CAUSE OF ACTION
## (State Law – Battery)

80.     The police Defendants wrongfully and intentionally battered the Plaintiff as set forth above.

81.     As a direct and proximate result of the foregoing wrongful acts of the police Defendants, Plaintiff sustained injury and damage as further set forth above.

# FIFTH CAUSE OF ACTION
## (*Respondent Superior*)

82.     Each of the paragraphs of this Complaint are incorporated as if restated fully herein.

83.     In committing the illegal acts alleged in the Fourth Cause of Action, Defendants were member of, and agents of, the Town of China Grove, acting at all relevant times within the scope of their employment.

84.     Defendant Town of China Grove are therefore liable for the acts of Defendants whom they employed which violated state law under the doctrine of *respondent superior*.

# SIXTH CAUSE OF ACTION
## (Violation of Knock and Talk Doctrine)

85.     Each of the paragraphs of this Complaint are incorporated as if restated fully herein.

86.     At all times relevant to this Complaint, Defendant Town of China Grove, Defendant CGPD Officers Jeremy Vail and Jeffrey Washam, with deliberate indifference, and conscious and reckless disregard of Plaintiff's constitutional and statutory rights of Plaintiff, by failure to apply the "Knock and Talk Doctrine" under the Fourth Amendment when no exigent circumstances existed and Defendants failure to announce their presence and obtaining Plaintiff's consent before forcing their way into Plaintiff's residence, maintained, tolerated, ratified, permitted, acquiesced in,

18

and/or applied, among others, one more of the *de facto* and written policies, practices and customs, individually or together as alleged above.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully request that this Court enter Judgement:

a. Permanently enjoining Defendants from enforcing their customs, policies, patterns, and practices as described herein that violate constitutional rights;

b. Permanently enjoining Defendants from taking any further retaliatory actions against Plaintiff for exercising his civil rights;

c. Retaining jurisdiction over this action and ordering Defendants to implement and enforce proper policies and practices including appropriate training and supervision to protect individuals from infringement of their constitutional rights;

d. Awarding the full amount of compensatory damages Plaintiff prove at trial against all Defendants jointly and severally;

e. Awarding the full amount of punitive damages as the jury determines to be appropriate;

f. Awarding any reasonable attorney's fees, if applicable, fees, cost and disbursements;

and

g. Granting such other relief as to the Court seems just and proper.

19

Date: *July 1, 2022*          Respectfully,



David R. Rodgers, *pro se*
819 Knight Street
China Grove, North Carolina 28023-2211
Telephone: 704-857-1616
Email: drrnc1@outlook.com



(Defendant Information Attached)

20

## **DEFENDANT INFORMATION**

### **Defendant #1:**

Town of China Grove
333 North Main Street
China Grove, NC 28023
704-857-2466

Thomas A. Brooke, Town Attorney

### **Defendant #2:**

Andrew Deal, Police Chief
Town of China Grove
203 Swink Street
China Grove, NC 28023
704-857-2466
704-857-5419 (fax)

### **Defendant #3:**

Officer Jeremy Vail
China Grove Police Department
203 Swink Street
China Grove, NC 28023
704-857-2466

### **Defendant #4:**

Officer Jeffrey Washam
965 E. NC Hwy 152
China Grove, NC 28023
Telephone Unavailable