## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DAVID R. RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:22CV518 |
| | ) | |
| THE TOWN OF CHINA GROVE, | ) | |
| Officer JEREMY VAIL, Officer | ) | |
| JEFFREY WASHAM, sued in their | ) | |
| individual capacities, and Chief of | ) | |
| Police ANDREW DEAL, sued in his | ) | |
| official and individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants the Town of China Grove ("TCG"),
Jeremy Vail ("Officer Vail"), Jeffrey Washam ("Officer Washam"), and Andrew Deal's ("Chief
Deal") (collectively "Defendants"), Motion to Dismiss Plaintiff David R. Rodgers' Complaint
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and Local Civil Rule 7.2.
(Docket Entry 11.)  Plaintiff has filed a Motion for Leave to File an Amended Complaint.
(Docket Entry 34.)  Defendants oppose the amendment on grounds of futility and prejudice.
(Docket Entry 36.)  There are also other motions before the Court:  Plaintiff's "Motion for
Leave to Serve 6 Special Interrogatories" (Docket Entry 19); Plaintiff's "Motion for Referral
to Pro Bono Representation Program" (Docket Entry 26); Defendants' Motion to Stay or,
alternatively, Extend Mediation Deadline (Docket Entry 27); and Plaintiff's Motion for an

Extension of Discovery Deadlines. (Docket Entry 28.) For the following reasons, the undersigned recommends that Plaintiff's motion to amend be granted in part and denied in part, and Defendants' motion to dismiss be granted in part and denied in part. Further, the undersigned will deny Plaintiff's requests for special interrogatories and pro bono counsel, and grant in part and deny in part both parties' motions regarding extension of the discovery-related deadlines.

## I. BACKGROUND

Plaintiff initiated this action in July of 2022 by filing the original Complaint asserting several constitutional violations, a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–34, and state law claims against Defendants stemming from an incident that occurred on the evening of October 23, 2019, at Plaintiff's residence in China Grove, North Carolina. (*See generally* Complaint, Docket Entry 1.) According to the Complaint, Plaintiff is a 62-year-old man diagnosed with Bipolar I Disorder along with physical disabilities which require him to use a wheelchair. (*Id.* ¶¶ 17-18.) As a result of Plaintiff's ailments, he has episodes of paranoia, and also has symptoms of an "altered mental status" and physical pain. (*Id.* ¶ 19.)

While on the phone with Aetna Insurance Company on the evening of October 23, 2019, Plaintiff made comments to a customer service representative regarding his thoughts on whether an individual should be able to make end-of-life decisions when medical treatment is no longer available. (*See id.* ¶¶ 20-22.) More specifically, Plaintiff, concurring with a television actor, informed the customer service representative that "if someone got to the place [where] there was no medical treatment . . . , he or she should be able to leave here on their own

2

terms." (*Id.* ¶ 22.) At no time, however, did Plaintiff state he would harm himself, and actually told the customer service representative that he was not going to do so. (*Id.* ¶ 23.)

The customer service representative thereafter placed Plaintiff on hold, and within minutes, Plaintiff heard a loud knocking at his front door. (*Id.* ¶¶ 24-25.) Plaintiff alleges that he opened the inner door of his home while sitting in his wheelchair and could not see who was present due to a bright flashlight shining in his face. (*Id.* ¶ 26.) Before he could open the outer storm door, Officers Vail and Washam with the China Grove Police Department forced their way into Plaintiff's residence without first announcing their "authority and purpose." (*Id.* ¶¶ 9-10, 27.) Plaintiff alleges that no exigent circumstances existed, and there was no reasonable belief that Officers Vail and Washam were being denied or delayed in Plaintiff answering the door. (*Id.* ¶¶ 27-28.) Officers Vail and Washam's forced entry caused Plaintiff to move backwards in the wheelchair. (*Id.* ¶ 29.)

Once inside, Officer Vail asked Plaintiff if he intended to harm himself, and although unsure of the inquiry, Plaintiff informed Officer Vail that he was okay and asked him to leave. (*Id.* ¶¶ 29-31.) Plaintiff alleges that he moved away from Officer Vail as Officer Vail began "badgering, harassing, and trying to provoke" him. (*Id.* ¶ 32.) In response, Plaintiff raised his arms to purportedly prevent Officer Vail from advancing, and Officer Vail grabbed Plaintiff's arms, causing "numerous skin tears." (*Id.*) Plaintiff then transitioned into the living room and moved from his wheelchair to his couch, where Officer Vail continued to harass Plaintiff. (*Id.* ¶ 33.) At that point, Plaintiff "pretended" to take medication that was on his coffee table, avoiding ingesting any, instead "bl[owing] the medication onto the floor." (*Id.* ¶ 32.)[1] In

---

[1] It appears Plaintiff inadvertently numbered two paragraphs "32" and "33".

response, Officer Vail "grabbed Plaintiff, threw [him] on the floor, face-down, in a prone position, and handcuffed Plaintiff behind his back." (*Id.*)

While in this position Plaintiff alleges that he experienced excruciating pain in his neck and when he attempted to move his head to relieve the pain, Officer Vail put pressure on Plaintiff's neck, stating "if you continue to move it's going to hurt more." (*Id.* ¶ 33.) Plaintiff laid on the floor unable to move for twenty minutes or more. (*Id.*) Still handcuffed, he eventually sat up at the direction of Officer Vail. (*Id.* ¶ 36.) Plaintiff denied services from the local fire department, after which the handcuffs were removed and he was transported to Novant Rowan Medical Center ("NRMC") by ambulance. (*Id.* ¶¶ 37, 39, 41.) Plaintiff alleges that for the duration of this incident, Officer Washam stood in Plaintiff's kitchen without making any attempt to intervene. (*Id.* ¶ 34.)

Medical officials examined Plaintiff at NRMC, tests were conducted, and Plaintiff spoke with a "sitter" from the hospital. (*Id.* ¶¶ 42-47.) Plaintiff alleges that Officer Vail made false statements to medical staff, including that Plaintiff had called his insurance company to inquire about his insurance if he were to die. (*Id.* ¶ 47.) Plaintiff was subsequently interviewed by a psychologist, and Plaintiff alleges that Officer Vail made false and misleading statements to a state magistrate judge in order to secure an Involuntary Commitment Order. (*Id.* ¶¶ 48-49.) Plaintiff remained in the emergency room for several more hours, then eventually discharged and transported home. (*Id.* ¶¶ 50-53.)

Plaintiff alleges that throughout the whole ordeal, he "presented a purely medical and mental health problem," and not anything law enforcement related. (*Id.* ¶ 54.) Plaintiff states that Defendants were aware of his condition prior to entering his residence and thus knew

4

Plaintiff's vulnerabilities. (*Id.* ¶ 55.) Plaintiff alleges that Defendants' conduct caused physical and emotional injuries. (*Id.* ¶ 56.) He further alleges that he sought an investigation of the incident with Chief Deal of the China Grove Police Department, though Plaintiff did not consent to being interviewed because he did not have an attorney. (*Id.* ¶ 58.) Plaintiff alleges that TCG, the police department, and its decision-makers has unconstitutional polices, customs and practices regarding restraining and using unreasonable force when dealing with individuals with mental health conditions. (*See id.* ¶¶ 59-63.) Plaintiff asserts a claim for excessive force, a *Monell* claim, an ADA claim, a state law battery claim, a claim under the doctrine of *respondeat superior*, and a violation of knock and talk doctrine. (*See id.* ¶¶ 66-86.)

After Defendants filed an answer to the original Complaint (Docket Entry 4), discovery commenced in this action in October 2022. (*See* Docket Entries 8, 9.) Defendants thereafter filed a motion to dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Entry 11.) In their brief in support of this motion, Defendants argue that Plaintiff's second and fifth claims fail because Plaintiff fails to sufficiently allege an official policy or custom attributable to TCG. (Docket Entry 12 at 6-9.)[2] Defendants further argue that Plaintiff's first and sixth claims fail against Officers Vail, Washam, and Chief Deal in their individual capacities because they are protected from civil liability by qualified immunity, and Plaintiff's fourth claim under state law fails under the doctrine of public official immunity. (*Id.* at 9-16.) Next, Defendants argue that all claims against Chief Deal in his official capacity are improper. (*Id.* at 16.) Finally, Defendants argue that Plaintiff's ADA claim fails because he

---

[2] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

failed to exhaust his administrative remedies before pursuing a suit in federal court. (*Id.* at 17-18.)

In response Plaintiff filed motions to amend his pleadings (Docket Entries 14, 20), which he later sought withdrawal (*see* Docket Entries 23, 33). Plaintiff filed a third motion for leave to file an amended complaint (Docket Entry 34) that is pending before the Court which Defendants oppose. The Court will consider the proposed Amended Complaint ("PAC", Docket Entry 34-1) in conjunction with Defendants' motion seeking dismissal. In between those motions, the parties filed other motions: Plaintiff's "Motion for Leave to Serve 6 Special Interrogatories" (Docket Entry 19); Plaintiff's "Motion for Referral to Pro Bono Representation Program" (Docket Entry 26); Defendants' Motion to Stay or, alternatively, Extend Mediation Deadline (Docket Entry 27); and Plaintiff's Motion for an Extension of Discovery Deadlines (Docket Entry 28). The undersigned will address the motions below.

## II.  DISCUSSION

### a.  <u>Defendants' Motion to Dismiss/Plaintiff's Motion to Amend</u>

Rule 12(c) provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In resolving a motion for judgment on the pleadings, the court must accept all of the non-movant's factual allegations as true and draw all reasonable inferences in the non-movant's favor. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012). "Unlike on a Rule 12(b)(6) motion . . . on a Rule 12(c) motion the [C]ourt may consider the Answer as well."

6

*Alexander v. City of Greensboro,* No. 1:09-CV-293, 2011 WL 3360644, at *2 (M.D.N.C. August 3, 2011). Although a motion for judgment on the pleadings pursuant to Rule 12(c) is separate and distinct from a Rule 12(b)(6) motion to dismiss, federal courts apply the same standard in considering both motions. *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009); *Burbach*, 278 F.3d at 405-06; *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards*, 178 F.3d at 243. A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons & United Mortg. & Loan Invest.*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is *plausible* on its face") (emphasis in original) (internal citation and quotation marks omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he

is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). It further states that "[t]he court should freely give leave when justice so requires." *Id.* Granting a motion to amend a complaint is within the discretion of the Court, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fourth Circuit has stated that "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). An amended complaint is futile if it cannot withstand a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); thus, the Court may deny the motion. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (addition of negligence claim was futile because case would not survive motion to dismiss).

<u>Futility</u>

In his motion for leave to amend the Complaint, Plaintiff contends that his amended pleading is an attempt to clarify the claims in the original Complaint, which will not be prejudicial to Defendants. (*See* Docket Entry 35; *see also* PAC.) In addition, Plaintiff seeks to add a new defendant, Mitzi Goodman, the emergency communications operator who took the call from Plaintiff's insurance representative on the day of Plaintiff's contact with law enforcement. (Docket Entry 35 at 3-4.) Plaintiff's amended pleadings are mostly the same,

in that this action arose from an incident at Plaintiff's home after his initial contact with his medical insurance provider regarding statements surrounding end-of-life decisions, which resulted in a welfare check by officers, forceful entry into Plaintiff's residence, physical contact with Plaintiff, and a transport to the hospital. (*See generally* PAC.) The PAC clarifies that Plaintiff made physical contact with Officer Vail at some point during their exchange, and states that Officer Vail grabbed Plaintiff's arm, all of which occurred before Plaintiff pretended to digest his medication. (*Id.* ¶¶ 31-33.) Plaintiff also clarifies that he was lying face down, in a prone position, handcuffed and with pressure to his neck for 15-20 minutes. (*See id.* ¶¶ 33-35.) As to Ms. Goodman, the PAC alleges that Ms. Goodman as the 911 communications operator was "derelict in her duties" by failing to obtain adequate information from the medical insurance representative. (*Id.* ¶ 22.) As a result, the PAC purports to raise the following claims: an excessive force claim under the Fourth Amendment against Officers Vail and Washam; a *Monell* claim against TCG; a state law battery claim against Officer Vail; a claim for gross negligence against Officers Vail and Washam; violation of the knock and talk doctrine under the Fourth Amendment against Officers Vail and Washam; and a negligence claim against Ms. Goodman. (*See* PAC ¶¶ 20-66.)

Defendants oppose the amendment on grounds that the amendments would be futile in the face of Defendants' Rule 12(c) motion as well as prejudicial to Defendants. (Docket

Entry 36 at 5-9.)  The undersigned will first address the arguments of futility[3] which necessarily implicates Defendants' Rule 12(c) motion.[4]

Defendants first assert that Plaintiff's claim against TCG pursuant to *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658 (1978), fails.  (Docket Entry 12 at 6-9.)  The undersigned agrees.  "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell*, 436 U.S. at 690.  However, a "municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Id.* at 691. "Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach."  *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).  "Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the 'official policy' requirement was 'intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby to make clear that municipal liability is limited to action for which the municipality is actually responsible.' "  *Riddick v. School Bd. of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

Policies and customs for which municipal liability may arise are:

---

[3] Some claims asserted in the original Complaint have been omitted from the PAC. As Plaintiff has abandoned those claims, the undersigned will not address them.

[4] In response to the motion to amend, Defendants "incorporate by reference the arguments and law as set forth" in their memorandum in support of their Rule 12(c) motion.  (*See* Docket Entry 36 at 6 n.2)

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle*, 326 F.3d at 471 (citation omitted). It is not enough for a plaintiff to merely "identify conduct properly attributable to the municipality." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1996). Instead, "the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the moving force behind the injury alleged." *Id.*

"To state a cause of action against a municipality, a section 1983 plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." *Pettitford v. City of Greensboro,* 556 F.Supp.2d 512, 530 (M.D.N.C. 2008). Failure to allege an official custom or policy alone provides a sufficient basis to grant a motion to dismiss or a motion for judgment on the pleadings. *Roseboro v. Winston-Salem/Forsyth Cnty. School Bd. of Educ.*, No. 1:14-CV-455, 2014 WL 5304981, at * 4 (M.D.N.C. Oct. 15, 2014) (dismissal of *Monell* claim warranted where the plaintiffs failed to allege a policy or custom of the defendant county school board)). Further, as to *Monell* claims based upon failure to train or custom and usage, "[a] plaintiff must point to a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379,

11

402 (4th Cir. 2014) (internal quotations and brackets omitted).  Thus, there must be allegations of "continued inaction in the face of documented widespread abuses," *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999) (citation omitted), such as through "the existence of reported and unreported cases and numerous successful motions which, if true, would buttress [an] legal conclusion." *Owens*, 767 F.3d at 403.

Here, the PAC bears nothing more than conclusory allegations regarding the alleged unconstitutional policies, practice, customs, and training of TCG and the China Grove Police Department.  (*See* PAC ¶¶ 49-53.)  This is insufficient to state a claim.  *Layden v. Stanley*, No. 4:22-CV-61-FL, 2023 WL 3733903, at *3 (E.D.N.C. May 30, 2023) (plaintiff's allegations "is a conclusory assertion that is not supported by factual allegations giving rise to a plausible inference of [*Monell*] liability on this basis.").  Further, there are no other allegations of widespread abuses, for example specific allegations regarding any other claims against TCG or any other officers in the China Grove Police Department regarding use of force in violation of citizens' constitutional rights, or similar circumstances involving a potential mental health crisis.  *See Wynn v. City of Richmond*, No. 3:21CV530, 2022 WL 2318497, at *12 (E.D. Va. June 28, 2022) ("Plaintiff does not, for example, state that [the city] had received several other complaints relating to unlawful searches or uses of force, . . . nor does she allege even one other instance of similar unconstitutional conduct[.]").  For these reasons, Defendants' motion should be granted on this issue, Count II of the PAC should not be permitted to proceed, and TCG should be dismissed.[5]

---

[5] Although the undersigned does not construe the PAC to assert any other claims against TCG, for the same reasons, such claims would fail.

12

Next, Defendants contend that the claims against Officers Vail and Washam, in their individual capacities, should be dismissed under the doctrines of qualified immunity and public official immunity. (Docket Entry 12 at 9-16.)[6] Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity may be raised in a motion to dismiss." *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997). However, "a defendant who raises qualified immunity in a 12(b)(6) motion 'faces a formidable hurdle' — because dismissal at this early stage 'is appropriate only if a plaintiff fails to state a claim that is *plausible* on its face,' the defense 'is usually not successful.' " *Smith v. City of Greensboro*, No. 1:19CV386, 2020 WL 1452114, at *5 (M.D.N.C. Mar. 25, 2020) (emphasis in original), *reconsideration denied*, No. 1:19CV386, 2021 WL 5771544 (M.D.N.C. Dec. 6, 2021) (quoting *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 396 (4th Cir. 2014). Further, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claims may be hard to identify." *Pearson v. Callahan*, 555 U.S. 223, 238-39 (2009) (internal citation omitted).

In determining whether a government official is shielded by qualified immunity, the Court applies the *Saucier v. Katz* two-step analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first step is whether "the pleaded facts demonstrate that the Defendant's conduct violated

---

[6] Defendants also argue dismissal of Chief Deal in his individual capacity; however, the Court does not construe the PAC to assert any claims against Chief Deal in any capacity, despite this PAC's title. In any event, as noted herein, to the extent asserted, any claims against Chief Deal should be dismissed.

13

a constitutional right," and second step considers whether the right was clearly established. *Blankenship v. Manchin*, 471 F.3d 523, 528 (4th Cir. 2006). Indeed, qualified immunity "protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (citing *Saucier*, 533 U.S. at 206 (2001)).

Here, Defendants first argue that based on what has been alleged, no violation of the "knock and talk" doctrine occurred regarding Officers Vail and Washam's approach to Plaintiff's residence. (Docket Entry 12 at 12.) "The Fourth Amendment protects homes and the land immediately surrounding and associated with homes, known as curtilage, from unreasonable government intrusions." *Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 189 (4th Cir. 2015) (citation and quotations omitted).[7] "This area around the home is 'intimately linked to the home, both physically and psychologically,' and is where 'privacy expectations are most heightened.'" *Fla. v. Jardines*, 569 U.S. 1, 7 (2013) (quoting *California v. Ciraolo*, 476 U.S. 207, 213 (1986)). "Because an individual's expectation of privacy is 'at [its] apex in one's home,' warrantless searches of homes are unconstitutional under the Fourth Amendment absent some type of justification." *Yanez-Marquez v. Lynch*, 789 F.3d 434, 464 (4th Cir. 2015) (citing *U.S. v. Gray*, 491 F.3d 138, 146 (4th Cir. 2007); *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). However, "a police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do." *Jardines*, 569 U.S. at 8

---

[7] "The Due Process Clause of the Fourteenth Amendment levies on state governments the same restrictions that the Fourth Amendment imposes on the federal government." *Walsh v. Gilliam*, No. 1:19-CV-00082-MR-WCM, 2020 WL 908897, at *11 (W.D.N.C. Feb. 25, 2020) (citing *Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961)).

14

(internal quotations and citation omitted); *Carpenter v. Perry*, No. 2:16-CV-4199, 2017 WL 5617067, at *10 (S.D.W. Va. Nov. 21, 2017) (citation omitted) ("It is well established that police officers without a warrant may permissibly approach a home, knock, and seek consent to enter.").

Plaintiff alleges here that Defendants failed to apply knock and talk principles under the Fourth Amendment in that Officers Vail and Washam, in the absence of exigent circumstances, failed to announce their presence and did not get Plaintiff's consent before forcing their way into his residence. (PAC ¶¶ 23-26, 64.) While Defendants correctly argue that no search occurs when an officer approaches the front door of a home, knocks, and engages in consensual conversation, *see Jardines*, 569 U.S. at 8, the allegations in the PAC as stated above slightly differ. Construing Plaintiff's PAC liberally, Plaintiff not only takes issue with the officers' manner of the approach to the residence, but the subsequent forceful entry into his home, without his consent and alleged absent exigent circumstances. Consent obviates the need for the warrant requirement, *see Craddock v. Beaufort Cnty. Sheriff Dep't*, No. 4:09-CV-92-D, 2011 WL 4460309, at *6 (E.D.N.C. Sept. 26, 2011) ("[T]he knowing and voluntary consent of an occupant who has, or is reasonably believed to have, authority over the property constitutes an exception to the Fourth Amendment's warrant requirement."), *aff'd sub nom. Craddock v. Beaufort Cnty. Sheriffs Dep't*, 489 F. App'x 712 (4th Cir. 2012), as well as the presence of exigent circumstances, for example "the need to assist persons who are seriously injured or threatened with such injury." *Stuart*, 547 U.S. at 403. Here, Plaintiff's allegations challenge such exceptions and therefore at this juncture, Plaintiff's Fourth Amendment claims

15

against Officers Vail and Washam in their individual capacities should proceed.[8] Thus, Defendants' motion on this issue should be denied.

Defendants next argue that in regard to Plaintiff's excessive force claim, even taking the allegations as true, Defendants' use of force was entirely reasonable in these circumstances. (Docket Entry 12 at 13.) Courts employ an "objective reasonableness" standard to determine whether an officer has used excessive force violative of the Fourth Amendment. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004). "The officer's actions do not amount to excessive force if they are objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Smith v. Ray,* 781 F.3d 95, 101 (citing *Graham v. Connor,* 490 U.S. 386, 397 (1989)). In considering the reasonableness of an officer's actions, the court examines the facts at the moment that the challenged force was employed. *Id.* Such an examination involves a balancing of the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citing *Graham,* 490 U.S. at 396). The Court must "avoid judging the officer's conduct with the 20/20 vision of hindsight, recognizing that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (internal quotations and citation omitted). Instead, "the question is whether a reasonable officer in the same circumstances

---

[8] Defendants also discuss the question of whether a right allegedly violated was "clearly established" for qualified immunity purposes. (*See* Docket Entry 12 at 13-15.) "The authorities are legion that, absent a recognized exception, citizens have a clearly established right to be free from warrantless searches and seizures." *Gibson v. Goldston*, No. 5:21-CV-00181, 2022 WL 2719725, at *9 (S.D.W. Va. July 13, 2022), *aff'd*, No. 22-1757, 2023 WL 7118522 (4th Cir. Oct. 30, 2023).

would have concluded that a threat existed justifying the particular use of force." *Id.* (internal quotations and citation omitted).

Here, the undersigned concludes that Plaintiff has sufficiently alleged an excessive force claim against Officer Vail. Plaintiff alleges that after he pretended to take medicine, Officer Vail "grabbed [Plaintiff], pulled [him] off the couch, and threw [him] onto the floor," in which Plaintiff was face-down, in a prone position, and handcuffed behind his back for 15-20 minutes. (PAC ¶ 33.) In pain, Plaintiff tried to move his neck as Officer Vail applied pressure to Plaintiff's neck. (*Id.*) As Plaintiff has alleged facts that Officer Vail's conduct was not objectively reasonable, the Court should deny Defendants' motion regarding the excessive force claim as to Officer Vail. Further, as Plaintiff has alleged that Officer Washam stood by and never attempted to intervene (*see id.* ¶ 29), Plaintiff has implicated bystander liability, *see Randall v. Prince George's Cnty., Md.,* 302 F.3d 188, 202 (4th Cir. 2002) (explaining concept of bystander liability), and therefore at this juncture the excessive force claim should proceed against Officer Washam as well. *See Stevenson v. City of Seat Pleasant, Md.,* 743 F.3d 411, 419 (4th Cir. 2014) ("Based on [the defendants'] undisputed presence at the scene of the altercation and the allegation that the officers 'allow[ed] to be committed . . . unreasonable seizure[s],' it requires no legal gymnastics or finagling" to construe the allegations as a bystander claim (alterations in original)); *see also Santiago v. McClaskey,* No. 1:12CV93, 2014 WL 944723, at *6 (M.D.N.C. Mar. 11, 2014) (finding that "[t]he facts alleged in the Third Amended Complaint also meet the standard set out in *Randall,* namely that Defendants Seagraves, Love, Bacote, and Davis observed fellow officers violating Plaintiff's constitutional rights and, despite the opportunity, chose not to intervene"), *aff'd sub nom. Garcia v. McClaskey,* 693 F. App'x 236 (4th

Cir. 2017); *Morning v. Dillon Cnty.*, No. 4:15-CV-03349-RBH, 2017 WL 4276906, at *3 (D.S.C. Sept. 27, 2017) (finding bystander claim within Fourth Amendment excessive force claim).

Defendants also seek to dismiss Plaintiff's state law battery claim against Officer Vail under the doctrine of public official immunity. (Docket Entry 12 at 15-16.)[9] Under North Carolina law, "[a] battery is made out when the . . . plaintiff is offensively touched against his will." *Ormond v. Crampton,* 16 N.C.App. 88, 94, 191 S.E.2d 405, 410 (1972). Under the doctrine of public official immunity, "a public official is [generally] immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." *Schlossberg v. Goins,* 141 N.C.App. 436, 445, 540 S.E.2d 49, 56 (2000) (internal quotations and citation omitted). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Grad v. Kaasa,* 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). Here, finding that Plaintiff's excessive force claim should proceed at this juncture, the state law claim should also proceed for the same reasons. *See Dean v. Campbell*, No. 5:22-CV-167-KDB-DCK, 2023 WL 5281945, at *11 (W.D.N.C. July 14, 2023) (recommending assault and battery claims go forward with excessive force claim and concluding that public immunity was inapplicable at early stages), *report and recommendation adopted*, No. 522CV00167KDBDCK, 2023 WL 5281514 (W.D.N.C. Aug. 16, 2023); *Thomas v.*

---

[9] Defendants also move for dismissal of this claim against Officer Washam and Chief Deal; however, the PAC specifically addresses Officer Vail under Count III as the individual engaging in a battery. (*See* PAC ¶ 56 ("Defendant Officer Vail's acts . . . herein constitute a battery under the common law of North Carolina.").)

18

*Holly*, 533 F. App'x 208, 223 (4th Cir. 2013) ("For the same reasons that we affirm the denial of qualified immunity with respect to Plaintiff's § 1983 excessive force claims . . ., we affirm the denial of public officer immunity with respect to Plaintiff's North Carolina assault and battery claims . . . ."); *Glenn-Robinson v. Acker*, 140 N.C. App. 606, 625, 538 S.E.2d 601, 615 (2000) ("[A]n assault [and battery] by a law enforcement officer upon a citizen can provide the basis for a civil action for damages against the officer only if a plaintiff can show that the officer used force against plaintiff which was excessive under the given circumstances.").

Lastly, Defendants argue that any claim against Chief Deal in his official capacity is improper and should be dismissed. (Docket Entry 12 at 16.) To the extent the PAC purports to assert any such claim, the undersigned agrees.[10] "Official[ ]capacity suits . . .'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Kentucky v. Graham*, 473 U.S. 159, 165-66 (quoting *Monell*, 436 U.S. at 690 n. 55). As any official capacity claim against Chief Deal is redundant of the claim against TCG, it should be dismissed. *See Smith v. Town of S. Hill*, 611 F. Supp. 3d 148, 169 (E.D. Va. 2020) ("Because [the plaintiff's] official capacity claims against the individual [officer] Defendants are redundant of her claims against the Town of South Hill, the Court will dismiss all counts against the individual [officer] Defendants brought against them in their official capacities."); *Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 463 (M.D.N.C. 2016) ("[D]uplicative claims against an individual in his official capacity when the government entity is also sued may be dismissed.").

---

[10] The undersigned already noted that the PAC does not allege a battery claim against Chief Deal. Nor are there any specific allegations to support an individual capacity claim against Chief Deal under Plaintiff's other causes of action, either by Chief Deal's own acts or under supervisory liability.

As to the gross negligence claim in the PAC which Plaintiff seeks to add against Officers Vail and Washam, the undersigned concludes that it should proceed at this juncture. "Gross negligence has been defined as wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (internal quotations and citation omitted). While public official immunity generally protects public officials from individual liability from negligence in their performance of duties, *see Schlossberg*, 141 N.C.App. at 445, 540 S.E.2d at 56, "public official immunity will not protect a public officer sued in his individual capacity for *gross* negligence." *Dean v. Campbell*, No. 5:22-CV-167-KDB-DCK, 2023 WL 5281945, at *10 (W.D.N.C. July 14, 2023) (emphasis added), *report and recommendation adopted*, No. 522CV00167KDBDCK, 2023 WL 5281514 (W.D.N.C. Aug. 16, 2023). Thus, given the allegations in the PAC, the undersigned finds that Plaintiff's claim for gross negligence should survive at this stage of litigation. *See id.* (recommending that gross negligence claim against officers proceed). Further, as to the negligence claim against Ms. Goodman, the current Defendants make no futility argument against such; rather, raising such issue under their argument that allowing Plaintiff to amend his Complaint would substantially prejudice them. (*See* Docket Entry 36 at 8-9.) The undersign will now address that argument.

## Prejudice

In determining whether an amendment is prejudicial to the opposing party, the Court evaluates the nature and the timing of the amendment. *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). An example of a prejudicial amendment is "one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant,

and] is offered shortly before or during trial." *Cross Creek Seed, Inc. v. Gold Leaf Seed Co.*, No. 1:16CV1432, 2017 WL 10765270, at *2 (M.D.N.C. Sept. 26, 2017) (citing *Laber*, 438 F.3d at 427 (alteration in original)). While delay alone is insufficient to deny a motion to amend, courts are more likely to find proposed amendments prejudicial to opposing parties in cases that have progressed closer towards judgment. *Laber*, 438 F.3d at 427.

The undersigned concludes that Defendants will not be prejudiced by the amendments and the claims relevant to them that survive their futility arguments. The addition of the gross negligence claim in the PAC surrounds essentially the same relevant facts alleged in the original Complaint. *See Simpson v. Specialty Retail Concepts, Inc.,* No. C–88–100–WS, 1992 WL 752146, at *4 (M.D.N.C. Jan. 27, 1992) (granting motion to amend where the proposed amendment "[did] not substantially change the character of the litigation"). In part, Defendants argue that they have designated an expert (*see* Docket Entry 36 at 8); however, that should not be impacted by the claims proceeding against them. To the contrary, to the extent Plaintiff seeks to add Ms. Goodman as a defendant, the undersigned finds that such addition would be prejudicial. In the original scheduling order, Plaintiff's deadline to request leave to join additional parties or amend pleadings was November 14, 2022. (Docket Entry 9.)[11] This

---

[11] Plaintiff's latest motion to amend was clearly filed after the deadline set forth in the original scheduling for seeking leave to amend. A party who requests leave to amend after a deadline set by a court's scheduling order must meet the requirements of Rule 15, but also show that there is good cause to modify the scheduling order under Rule 16(b)(4). *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) ("Given their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."). The undersigned finds that good cause is shown solely to the extent the undersigned concludes that specific claims be allowed to proceed.

matter is set for trial in April 2024, and despite, as noted below, the Court's allowance for a very brief extension of discovery in light of previous pending discovery-related extension motions, allowing a new defendant to now join this action would require further extensions and delays in this action which has been pending since July 2022. Therefore, Plaintiff's proposed amendment to the extent it seeks to add a claim against Ms. Goodman should not be permitted as it would be unduly prejudicial to Defendants.

In sum, both Plaintiff's motion for leave to file an amended complaint and Defendants' motion under Rule 12(c) should be granted in part and denied in part. The PAC sufficiently alleges Fourth Amendment claims against Defendants Vail and Washam, state law claims for gross negligence against Defendants Vail and Washam, and a state law claim for battery against Defendant Vail. However, the claims against Chief Deal and TCG should be dismissed as the proposed amendments are futile, and the negligence claim against Ms. Goodman should not be permitted as it would be unduly prejudicial to Defendants.

### b. Remaining Motions

There are several additional motions pending before the Court. Plaintiff seeks leave to serve 6 special interrogatories. (Docket Entry 19.) Plaintiff is seeking additional interrogatories "for the limited purpose of determining and clarifying policies and procedures [and implementation thereof] by the China Grove Police Department[.]" (*Id.* at 1.) Given the recommendation herein of dismissal of claims against Chief Deal and TCG, this request is moot. Beyond that, without reviewing the additional interrogatories or further information, the Court is unable to determine if good cause exists warranting the additional interrogatories in excess of the 25 permitted by Rule 33(a) and the scheduling order. *See Pauley v. CNE Poured*

*Walls, Inc.*, No. 3:18-CV-01508, 2019 WL 3226996, at *3 (S.D.W. Va. July 17, 2019) ("When considering a motion for leave to serve interrogatories in excess of the twenty-five permitted by Rule 33(a), the court looks at whether good cause exists for allowing the additional interrogatories."). This motion will therefore be denied.

Plaintiff also seeks appointment of counsel through this Court's Pro Bono Representation Program. (Docket Entry 26.) A litigant has no right to appointed counsel in a 42 U.S.C. § 1983 suit. *Alexander v. Parks*, 834 F. App'x 778, 782 (4th Cir. 2020). The Court may appoint counsel in civil cases only when exceptional circumstances exist. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). "Whether the circumstances are exceptional depends on the type and complexity of the case, and the abilities of the individuals bringing it." *Lowery v. Bennett*, 492 F. App'x 405, 411 (4th Cir. 2012) (internal quotations and citation omitted). "If it is apparent to the district court that a *pro se* litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978). Further, "the Court often looks to its Pro Bono Representation Program . . . 'where summary judgment has been denied and the case is set for trial[.]'" *Watson v. McPhatter*, No. 1:17CV934, 2022 WL 426670, at *3 (M.D.N.C. Feb. 11, 2022) (citing Amended Standing Order No. 6 at 1 (M.D.N.C. Nov. 23, 2016). Here, Plaintiff has not demonstrated that this is an exceptional case warranting appointment of counsel at this juncture. Plaintiff's claims are not complex, and Plaintiff's submissions thus far show that he is capable of representing himself in this matter. Nor has this case reached the point where summary judgment has been denied. Therefore, Plaintiff's request for a pro bono attorney

through this Court's Pro Bono Representation Program is denied without prejudice at this time.

Lastly, both parties move to extend discovery-related deadlines. (*See* Docket Entries 27, 28.)  Defendants' motion specifically relates to mediation and seeks an order to stay or extend the existing mediation deadline pending a ruling on their Rule 12(c) motion and Plaintiff's motion for leave to amend his complaint.[12]  Plaintiff requests an extension of several deadlines, including one of which had long passed at the time his motion was filed.  (*See e.g.*, Docket Entry 28 at 1-2 (Plaintiff requesting extension of expert disclosures that were due approximately 3 months prior to the request).)  Defendants oppose Plaintiff's request.  (*See* Docket Entries 29, 30.)  At this juncture, it is unclear if a mediation has taken place, although the parties have selected a mediator.  (*See* Docket Entries 8, 38.)  Further, Plaintiff's motion does not warrant grounds for an extension of his expert disclosure deadline.  Nor is it clear if any additional discovery took place (and to what extent) since the filing of the parties' motions. In light of such and in the Court's discretion, the undersigned will permit a brief 30-day time period of discovery, to include time to conduct mediation.  As such, Defendants' motion to stay or, alternatively, extend mediation deadline, and Plaintiff's motion for an extension of discovery deadlines are both granted in part and denied without prejudice in part.

---

[12] The motion also states that Defendants are "unable to complete discovery as there are questions regarding what claims asserted by Plaintiff are appropriate and applicable to this action." (Docket Entry 27 at 3.)  It also mentions submitting a proposed new scheduling order.  (*See id.*) However, Defendants specifically refer to the mediation deadline.

## III.    CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that Plaintiff's Motion for Leave to File an Amended Complaint (Docket Entry 34) be GRANTED IN PART AND DENIED IN PART, and Defendants' Motion to Dismiss Plaintiff's Complaint (Docket Entry 11) be GRANTED IN PART AND DENIED IN PART.  As a result, any claims against Chief of Police Andrew Deal and the Town of China Grove should be dismissed, and this matter should proceed solely as to the following claims as alleged in the Amended Complaint: use of excessive force (Count I) against Defendants Vail and Washam; state law battery claim (Count III) against Defendant Vail; gross negligence claim (Count IV) against Defendants Vail and Washam; and a Fourth Amendment claim (Count V)  against Defendants Vail and Washam.

IT IS HEREBY ORDERED that Plaintiff's "Motion for Leave to Serve 6 Special Interrogatories" (Docket Entry 19) is DENIED as moot; Plaintiff's "Motion for Referral to Pro Bono Representation Program" (Docket Entry 26) is DENIED without prejudice; Defendants' Motion to Stay or, alternatively, Extend Mediation Deadline (Docket Entry 27) and Plaintiff's Motion for an Extension of Discovery Deadlines (Docket Entry 28) are both GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART.

IT IS FURTHER ORDERED that the Clerk shall file the Amended Complaint (Docket Entry 34-1) as a separate document.

IT IS FURTHER ORDERED that discovery shall be extended up to and including December 20, 2023, and the parties should conduct mediation within such time period. FURTHER, the briefing schedule for the filing of dispositive motions, including motions for

summary judgment, shall be as follows: dispositive motions shall be filed no later than January 10, 2024; responses to such motions shall be filed no later than January 31, 2024; and replies shall be filed no later than February 7, 2024.

_____
/s/  Joe L. Webster
United States Magistrate Judge

November 20, 2023
Durham, North Carolina